FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### Western Division

00 FEB 24 AM 9: 47

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| TOM HARRIS, | ) |
|     Plaintiff, | ) |
| | ) |
| -vs.- | ) Case No. CV 96-1751-W |
| | ) |
| | ) |
| BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ALABAMA, | ) |
|     Defendant. | ) |

ENTERED
FEB 2 4 2000

## OPINION

Tom Harris, a faculty member in the College of Communication of the University of Alabama, filed this action against the University's Board of Trustees and Dean Edward Mullins. Harris alleged that, because of problems with alcohol, he was not allowed for several months to engage in outside consulting work, contrary to his rights under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973.

Claims in the case were pared down through granting of partial summary judgment,[1] and the case was set for trial on January 10, 2000. On January 11th—after selection of a jury but before the presentation of evidence—the Supreme Court issued its decision in *Kimel v. Florida Board of Regents*, 2000 WL 14165. The Board then moved for judgment as a matter of law, asserting that it was entitled to sovereign immunity under the Eleventh Amendment and, alternatively, that the action was barred by applicable statutes of limitation. Having heard fully from the parties, the court concludes that judgment is due to be entered in the defendant's favor.[2]

---

    1. The court concluded that the Board was immune from various state law claims and that Dean Mullins was not subject to suit under the ADA or Section 504. Some of plaintiff's ADA and Section 504 claims were dismissed for lack of a genuine dispute of fact, but the claim involving the outside consulting work survived the motion. The court noted the special problems that can arise with respect to alcohol-related disabilities under the ADA and Section 504, but concluded that, at the least, there was substantial evidence that University officials had "regarded" Harris as having a covered disability

    2. It is unclear whether this should be treated as the granting of a motion under Fed. R. Civ. 50 or—since the jury was released after preliminary arguments persuaded the court that the defendant was likely to prevail—as the granting of a motion under

(continued...)

I. ADA Claims.

In *Kimel*, the Supreme Court held that the Age Discrimination in Employment Act of 1967 (ADEA) did not constitute legislation that enforced the provisions of the Fourteenth Amendment and that, accordingly, States had immunity under the Eleventh Amendment from ADEA suits for money damages. What effect does this ruling have on monetary claims against States under the ADA?

This court concludes that, when a State makes employment decisions, it is no less rational to consider a person's disabilities as to consider the person's age. The ADA does not merely proscribe discriminatory employment decisions based on irrational or emotional non-job-related prejudices against those with disabilities. It also imposes special responsibilities on employers in the employment of those whose disabilities will in fact, to some degree, limit or impair their ability to perform a job in the manner expected of others. The ADA, indeed, provides for some preferential treatment of disabled workers by requiring employers in such circumstances to make reasonable accommodations through job restructuring, changes in work schedules, acquisition of equipment, etc. The court does not question the laudable goals of the ADA or the prophylactic effects it has had in ameliorating the problems faced by those with disabilities. But the court does conclude that, under the teaching of *Kimel*, the obligations of the ADA cannot be viewed as enforcing rights protected under the Fourteenth Amendment and cannot abrogate the sovereign immunity enjoyed under the Eleventh Amendment by a non-consenting State. The plaintiff's claims under the ADA against the Board, which here seek only monetary damages, are dismissed.[3]

II. Section 504.

The Board is not, however, entitled to sovereign immunity with respect to Harris' claims under Section 504 of the Rehabilitation Act of 1973. Eleventh Amendment rights can be waived, as by accepting federal funds under legislation in which Congress has clearly conditioned those funds on a waiver of sovereign immunity. See *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985) (Rehabilitation Act of

---

2. (...continued)
Rule 56. The court has afforded the parties the opportunity to submit materials as if it were a motion for summary judgment as well as one for judgment as a matter of law.
    3. The court need not address the alternative grounds asserted by the Board with respect to the timeliness of the EEOC charge or of this action.

1973, as then written, lacked such clear intent). The year after the *Atascadero* decision, Congress enacted legislation to make explicit that acceptance of Rehabilitation Act funds would constitute a waiver of sovereign immunity with respect to suits for violation of the Act. It is undisputed that the University has received substantial funds under the Act since that amendment.

The Eleventh Circuit has recently held that this waiver of immunity by accepting Rehabilitation Act funds is effective with respect to agencies of the State of Alabama. *Sandoval v. Hagan*, 197 F.3d 484 (Nov. 30, 1999). The Board here argues that the *Sandoval* court incorrectly failed to apply decisions holding that questions of sovereign immunity waiver must be decided on the basis of state law and that, under Alabama's constitution as interpreted by the Supreme Court of Alabama, even an explicit waiver of sovereign immunity by the University—or, for that matter, by the Governor, the Attorney General, or the Legislature—would have been ineffective. Whatever the merits of the Board's argument, this court is bound to follow the decision of the Court of Appeals and accordingly concludes that the plaintiff's claims under Section 504 are not barred by the Eleventh Amendment.

The Board has alternatively moved for judgment as a matter of law on the basis of an affirmative defense asserted in its answer; namely, that plaintiff's claims under Section 504 are time-barred. This defense was of little practical consequence during the period, pre-*Kimel*, that the University appeared to be subject to potential liability under the ADA.

The restriction on Harris's outside consulting work was imposed in mid-December 1993 and was lifted in March 1994. This action was not filed until July 8, 1996, several months after expiration of the 2-year limitations period incorporated from state law for Section 504 purposes. See *Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407 (11th Cir. 1998); Ala. Code § 6-2-38(1) (1975). Unlike claims under the ADA or Title VII, there is no requirement or provision for administrative review of claims under Section 504. Accordingly, there is no basis for tolling the time for filing an action under Section 504 while Harris's charge of discrimination under the ADA was pending before the EEOC.

Plaintiff contends that this action should, nevertheless, be deemed as timely filed on principles of equitable tolling or estoppel arising by virtue of an earlier action brought by him. A chronology of pertinent

3

events is as follows:

On March 8, 1995, some 84 days after receiving a Right to Sue Letter from the EEOC, Harris filed an action (CV 95-C-559-W) against the University's Board of Trustees and others, including claims under the ADA and Section 504. Included in the Board's motion to dismiss, filed June 9, 1995, was an assertion that, having declared bankruptcy in March 1994, Harris lacked standing to proceed with these claims, which constituted an (unlisted) asset of the Bankrupt Estate, and that Harris had not been authorized to proceed individually with the prosecution of the action. That case was assigned to Judge Clemon of this court, who, on June 30, 1995, denied the motion to dismiss but granted a motion by Harris's attorney to withdraw as counsel.

On November 3, 1995, the Bankruptcy Judge approved a motion by the Trustee that authorized Harris to proceed individually, and at this own expense, with CV 95-C-559-W, but then imposed a security interest in favor of the Bankruptcy Estate on 50% of any net recovery from that action (with provisions for reopening the Estate in the event of such a recovery).

On February 27, 1996, apparently unaware of the November order by the Bankruptcy Court, the University's attorney moved to dismiss CV 95-C-559-W for want of prosecution, noting that, since the June 30, 1995, order Harris had neither secured substitute counsel nor taken any action to pursue the litigation in the district court pro se.

On March 7, 1996, apparently also unaware of the Bankruptcy Court's order, Judge Clemon dismissed CV 95-C-559-W "without prejudice to the right of plaintiff to subsequently seek [sic] petition for reinstatement of this action in order to pursue any claim embraced herein not adjudicated in, or discharged by, the proceedings in the Bankruptcy Court." The order further provided that "such reinstatement, when allowed, will cause the filing date of any claim so reinstated to relate back to the original filing date of the action."

On July 9, 1996, Harris, acting pro se, filed the instant action (CV 96-P-1751-W). One can only speculate as to whether Harris's decision to file an entirely new action (albeit incorporating most, though not all, of the claims previously raised), rather than to attempt to reinstate the earlier action, was motivated by a desire to avoid the security interest in favor of the Bankruptcy Estate that would have applied to a recovery in CV 95-C-559-W. In any event, on August 1, 1996, the Board answered by denying that the University had violated Harris's rights under the ADA or Section 504 and by including as a special defense that the action was barred by applicable statutes of limitations.

By early October, Harris had employed an attorney, J. Paul Whitehurst. Whitehurst had not been involved in the bankruptcy proceeding, in the earlier case, or in the filing of the new case. Whitehurst and Stanley J. Murphy, the University's attorney, had a planning meeting on October 7, 1996, under local rule LR26.1(d). It is undisputed that during their conference they had some discussion about the impact on the new case of the bankruptcy proceeding and the prior case, though, as is understandable after over three years, there are some difference in their current recollections about precisely what was said.

In any event, following their meeting and after Whitehurst had filed an amended complaint, Murphy on January 13, 1997, filed an answer to the amended complaint, which did not assert that the action was precluded by virtue of the dismissal of the earlier case but which did include as an affirmative defense that the action was barred by applicable statutes of limitation.

Completion of discovery took longer than had been anticipated, with several extensions in the discovery deadlines being authorized by the court. In October 1999 this court granted partial

4

summary judgment in favor of the defendants with respect to most of the plaintiff's claims, but denied summary judgment with respect to the "outside consulting" claim. The only discussion by the court regarding the statutes of limitations was to reject the defendant's assertion that the "outside consulting" claim should be viewed as having accrued back in the fall of 1992, prior to any manifested problems with alcohol.

At no point did the plaintiff seek to vacate the order dismissing CV95-C-559-W, which, if granted, would have called for the filing date "to relate back to the original filing date of this action."

The first question is whether, for purposes of CV96-P-1751-W, the 2-year limitations period was suspended or equitably tolled during the twelve months that CV95-C-559-W was pending. Controlling law answers in the negative. See *Justice v. United States*, 6 F.3d 1474 (11th Cir. 1993); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

The second question is whether the Board has waived, or is estopped from asserting, the defense of the statute of limitations. Plaintiff's argument is essentially that, based on the discussions at the planning meeting in October 1996, Whitehurst "decided to forego the opportunity to request that Judge Clemon reinstate the prior case." (Plaintiff's Response to Defendant's Motion for Judgment as a Matter of Law, dated February 16, 2000.) According to Whitehurst's affidavit attached to that Response:

"I also brought it to his [Murphy's] attention that in my opinion the proper way to proceed in the case would have been to ask Judge Clemon to reinstate the prior case. He agreed with that opinion. I asked him whether he would have any objection to the matters being litigated in the new case as opposed to requiring the Plaintiff to seek reinstatement of the prior case. He advised me that he had no objection to the Plaintiff litigating his claims in this case. There was no discussion at that time concerning the statute of limitations."

Even accepting Whitehurst's recollection, the statements attributed to Murphy can hardly be the basis for asserting that the defendants waived the defense of the statute of limitation, as distinguished from an agreement not to assert that the dismissal of the earlier action was res judicata. The answer already on file in the new case included the affirmative defense of the statute of limitations, and, three months later, when answering plaintiff's amended complaint, the defendants reasserted the statute of limitations as an affirmative defense. Then during the summer of 1999, the parties presented arguments on the defendants' motion for summary judgment, with one of the issues being the statute of limitations and without the plaintiff's asserting

5

that such defenses had been waived.[4]

Nor, for like reasons, can it be successfully argued that the defendants are estopped from pursuing such defenses. Whitehurst was as aware as Murphy that the "proper" course for Harris would have been to seek to reopen CV95-C-449-W and that, if such a request were to be made at that late date and were to be granted, the claims would have related back to March 1995, when that action had been filed. Moreover, it is problematic whether the plaintiff suffered any detriment by deciding not to attempt to reopen CV95-C-559-W. Judge Clemon might well have denied a motion in the fall of 1996 to set aside the dismissal order in view of the facts that over six months had elapsed since entry of the order, that (instead of taking advantage of the prescribed opportunity to reopen the case) plaintiff had elected to file a new case—perhaps in an effort to avoid the Trustee's lien—and, indeed, that for some four months before the case was dismissed Harris had been authorized by the Bankruptcy Court to proceed individually, albeit subject to the lien.

Upon consideration, the court concludes that the plaintiff's Section 504 claims are barred by the 2-year period of limitations.

### III. Conclusion.

By separate order, this case will be dismissed with prejudice, with costs (but not attorney's fees) taxed against the plaintiff

This the 23rd day of February, 2000.

*[signature]*
United States District Judge

---

4. It should be noted that, with the ADA claims still in the case, the parties and the court did not focus on the 2-year limitations period for Section 504 claims.